UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GINA OSTERMEIER-MCLUCAS, Individually and on Behalf of All Others Similarly Situated, | **20-CV-2915 (ARR) (SJB)** |
| *Plaintiff,* | |
| — against — | |
| RITE AID HDQTRS. CORP. & RITE AID OF NEW YORK, INC., | **Opinion & Order** |
| *Defendants.* | |

ROSS, United States District Judge:

On July 1, 2020, plaintiff, Gina Ostermeier-McLucas, commenced this putative class action against Rite Aid Corporation, claiming violations of the New York General Business Law ("NYGBL") and the Magnuson-Moss Warranty Act ("MMWA") as well as breach of express warranty and unjust enrichment. Compl. ¶¶ 1, 57–104, ECF No. 1. Plaintiff later amended her complaint, replacing defendant Rite Aid Corporation with defendants Rite Aid Hdqtrs. Corp. ("RAHC") and Rite Aid of New York, Inc. ("RAoNY") and removing her MMWA and breach of express warranty claims. Am. Compl. ¶¶ 1, 60–87, ECF No. 19. On March 16, 2021, defendants moved to dismiss plaintiff's amended complaint in its entirety. Defs.' Mot. Dismiss 1 ("Def.'s Mot."), ECF No. 32-1. Plaintiff filed her opposition on April 16, 2021, Pl.'s Opp'n, ECF No. 35, and defendants filed their reply on May 7, 2021, Defs.' Reply, ECF No. 36. For the following reasons, defendants' motion is granted.

## BACKGROUND

Rite Aid owns and operates retail stores throughout the United States. Am. Compl. ¶ 2. From these stores, Rite Aid distributes its own brand of Infants' Fever Reducer & Pain Reliever ("Infants' Products") and Children's Fever Reducer & Pain Reliever ("Children's Products") (collectively, the "Products"). *Id.* ¶ 3. Acetaminophen, the active ingredients in the products, "can be dangerous, and perhaps even fatal, if taken in large doses." *Id.* ¶ 4. The Food and Drug Administration ("FDA") warns caregivers to "[b]e very careful when you're giving your infant acetaminophen." *Id.* Plaintiff alleges that Rite Aid exploits parents' and caregivers' fears of administering dangerous doses to their infants by packaging the products in a way that "deceives reasonable consumers into thinking that infants cannot safely take Children's Products." *Id.* ¶¶ 4, 6. Although the Infants' Products contain the same active ingredient and formulation (i.e., 160 mg per 5 mL of acetaminophen) as the Children's Products, Rite Aid charges approximately three times as much per ounce for the Infants' Products as for the Children's Products. *Id.* ¶ 36. The packaging highlights the words "infants'" and "children's" in "distinctive and colored lettering." *Id.* ¶ 34.

The Amended Complaint includes images of the front labels of the products:

 

*Id.* Both labels note the active ingredient and concentration: acetaminophen 160 mg/5 mL. *Id.* The labels also note several differences. The Infants' Products are marketed to consumers of "ages 2-3 years" while the Children's Products are marketed to consumers of "ages 2-11 years." *Id.* The Infants' Products are available in "2 FL OZ (59 mL)" while the Children's Products are available in "4 FL OZ (118 mL)." *Id.* The products also come with different dosing instruments, with the infants' label stating caregivers must "use only enclosed syringe." *Id.* Finally, only the Infants' Products are labeled as having a "DYE-FREE non-staining formula." *Id.*

Plaintiff has one nine-year-old child and one three-year-old grandchild. *Id.* ¶ 11. She first purchased the Infants' Products in or around 2010 when she lived in New York. *Id.* Relying on the Products' packaging and labeling, she believed that the Infants' Products were specifically formulated and designed for infants. *Id.* ¶ 13. If she had known that the Products did not contain different medicines, she "would not have purchased the Infants' Products or paid a price premium for the Infants' Products." *Id.* Plaintiff "desires to purchase 'Infants' products in the future and regularly visits retail locations where such products are sold," but currently "cannot purchase the

Infants' Products because she remains unsure whether the labeling of the Products is, and will be, truthful and non-misleading." *Id.* ¶¶ 15–16.

Plaintiff seeks to represent a class of all "persons who purchased Infants' Products for personal use in the United States" (the "Nationwide Class") as well as a class of all "persons who purchased Infants' Products for personal use in New York" (the "New York Subclass"). *Id.* ¶¶ 46–48. On behalf of herself and the Nationwide Class, plaintiff brings a common law cause of action for unjust enrichment. *Id.* ¶¶ 81–87. On behalf of herself and the New York Subclass, she claims violations of NYGBL §§ 349 and 350. *Id.* ¶¶ 60–80.

## STANDARD OF REVIEW

Defendants move to dismiss plaintiff's amended complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), for lack of personal jurisdiction under Rule 12(b)(2),[1] for failure to state a claim under Rule 12(b)(6), and for failure to plead her claims with sufficient particularity under Rule 9(b).[2] "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face,' . . . and 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Rush v. Canfield*, 649 F. App'x 70, 70 (2d Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

---

[1] Although defendants purport to challenge plaintiff's complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2), they have not included any argument pertaining to that issue in their briefing so I will not address it in my opinion.

[2] As defendants' motion is resolved under Rules 12(b)(1) and 12(b)(6), I need not address their argument that plaintiff has failed to plead her claims with sufficient particularity pursuant to Rule 9(b).

In reviewing a 12(b)(6) motion, the court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Bacon v. Phelps*, 961 F.3d 533, 540 (2d Cir. 2020) (citation omitted). I may consider only those "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). If I find that the complaint does not "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face," I must dismiss the case. *Cnty. of Erie v. Colgan Air, Inc.*, 711 F.3d 147, 149 (2d Cir. 2013) (citation omitted).

The standard of review for a motion to dismiss under 12(b)(1) is substantively "identical" to the standard for a 12(b)(6) motion. *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 169 n.3 (2d Cir. 1999). However, whereas the moving party bears the burden of proof in a 12(b)(6) motion, in a 12(b)(1) motion the party invoking the court's jurisdiction bears this burden. *See Baskerville v. Admin. for Children's Servs.*, No. 19-CV-602 (AMD) (LB), 2020 WL 59826, at *1 (E.D.N.Y. Jan. 6, 2020). Dismissal is proper under Rule 12(b)(1) for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate" the claim. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

## DISCUSSION

### I. Plaintiff's NYGBL claims are dismissed.

#### a. Plaintiff lacks standing to seek injunctive relief.

Defendant argues that I should dismiss plaintiff's claims for injunctive relief, *see* Am. Compl. ¶¶ 62, 69, 80, for lack of standing, Defs.' Mot. 17–18. To establish Article III standing to seek injunctive relief, a plaintiff must "allege a risk of future injury." *Sitt v. Nature's Bounty, Inc.*,

No. 15-CV-4199 (MKB), 2016 WL 5372794, at *7 (E.D.N.Y. Sept. 26, 2016). A plaintiff does not necessarily have standing to seek injunctive relief even when it is clear that she has standing to seek damages. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016). In her amended complaint, plaintiff states that she "desires to purchase 'Infants' products in the future and regularly visits retail locations where such products are sold. If Plaintiff knew that the Infants' Products' labels were truthful and non-misleading, she would continue to purchase the Infants' Products in the future." Am. Compl. ¶ 15. This allegation is not sufficient to demonstrate that plaintiff is likely to be injured by defendants' conduct in the future. "[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" *Lyons*, 461 U.S. at 95–96 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)). Because a plaintiff in a false advertisement case has necessarily become aware of the alleged misrepresentations, "there is no danger that they will again be deceived by them." *Elkind v. Revlon Consumer Prods. Corp.*, No. 14-CV-2484 (JS) (AKT), 2015 WL 2344134, at *3 (E.D.N.Y. May 14, 2015). Although some district courts have allowed claims for injunctive relief to proceed in similar circumstances, *see, e.g., Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015); *Ackerman v. Coca-Cola Co.*, No. 09-CV-395 (DLI) (RML), 2013 WL 7044866, at *15 n.23 (E.D.N.Y. July 18, 2013) (R. & R.), these cases are inconsistent with Article III and with Supreme Court and Second Circuit case law, *see Nicosia*, 834 F.3d at 239; *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 564–65, 565 n.3 (S.D.N.Y. 2016) ("[T]he Court declines to follow the reasoning in *Ackerman* as Second Circuit precedent dictates otherwise.").

To the extent that plaintiff was deceived by Rite Aid's labels, the existence of this lawsuit shows that she is now aware that the Infants' Product contains the same medicinal content as the

Children's Product. Thus, she will not be harmed again in the same way in the future and therefore lacks standing to seek injunctive relief.

> **b.** **The remainder of plaintiff's NYGBL claims are dismissed because plaintiff has failed to plausibly allege that Rite Aid's labels are "materially misleading."**

Under § 349 of the NYGBL, "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful." NYGBL § 349(a). Under § 350, "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is . . . unlawful." *Id.* § 350. To state a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012)).

Defendants argue that plaintiff has failed to establish the second element. To be "misleading" under § 349 or § 350, the defendant's conduct must have been "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.* (quoting *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007)). To state a claim, "plaintiffs must do more than plausibly allege that a 'label might conceivably be misunderstood by some few consumers.'" *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018) (quoting *Ebner v. Fresh Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)). Instead, they must "plausibly allege 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id.* (quoting *Ebner*, 838 F.3d at 965); *see also Fermin v. Pfizer Inc.*, 215 F. Supp. 3d 209, 211 (E.D.N.Y. 2016) ("The term 'likely' indicates that deception must be probable, not just possible."). This standard is an objective one. *See Cohen*, 498 F.3d at

126. Further, "[i]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (per curiam).

Defendants argue that plaintiff's NYGBL claims fail as a matter of law because no reasonable consumer could be misled by Rite Aid's labels. Defs.' Mot. 8. They argue that plaintiff's belief that the two products contained different medicinal contents is unreasonable because "any consumer examining the labels can tell that the medicine contained in a bottle of the Infants' Product has the same active ingredient in the same active-ingredient dosage amount as the Children's Product." *Id.* Contrary to plaintiff's claim that Rite Aid "does not disclose" the fact that the products contain "the same active ingredient and formulation," Am. Compl. ¶ 7, the front labels of both products clearly disclose that the products contain "acetaminophen 160 mg/5 mL." Am. Compl. ¶ 34. The front labels also clearly disclose the age range of consumers who can use the products, so any parent or caregiver comparing the products can see that children aged 2–3 can safely consume either product. *Id.*; Defs.' Mot. 9.

In the last year, the Northern District of California has dismissed two similar complaints against companies marketing children's and infants' acetaminophen products on the grounds that the labels are not misleading because the labels prominently and accurately disclose their medicinal contents. *See Lokey v. CVS Pharmacy, Inc.*, No. 20-CV-4782 (LB), 2021 WL 633808, at *4–5 (N.D. Cal. Feb. 18, 2021) (finding that "nothing about the labels [of the infants' and children's products] is misleading" because "the labels are accurate"); *Eidmann v. Walgreen Co.*, No. 20-CV-4805 (EJD), 2021 WL 764121, at *6 (N.D. Cal. Feb. 26, 2021) (finding that infants' product label is not misleading because it "displays overlapping age ranges and identical acetaminophen concentration information in large print on the front of the box," thereby "tell[ing]

the consumer exactly what she is getting" (citation omitted)). The infants' acetaminophen cases cited by plaintiff in opposition are distinguishable. For example, in *Elkies v. Johnson & Johnson Services, Inc.*, the front label for the infants' product included a picture of a mother and baby along with the word "infants," with no age range listed. No. 17-CV-7320 (GW), 2018 WL 11328613, at *2, 5 (C.D. Cal. Feb. 22, 2018); *see also Youngblood v. CVS Pharmacy*, No. 20-CV-6251 (MCS) (MRW), 2020 WL 8991698, at *4 (C.D. Cal. Oct. 15, 2020) (emphasizing the photograph of a mother and baby on the infants' product label versus the photograph of a mother and older child on the children's product label). Here, by contrast, the labels do not contain misleading imagery. *See Eidmann*, 2021 WL 764121, at *5–6 (distinguishing the case from *Elkies* and *Lokey*, in which the misleading imagery was "dispositive").

I agree with defendants and the Northern District of California. Plaintiff has not plausibly alleged that "a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled" by Rite Aid's labels. *Jessani*, 744 F. App'x at 19. A reasonable consumer would not be misled into believing that the infants' products contain medicine that is different from that in the children's products when the labels clearly disclose otherwise. Both front labels state that they contain the same ingredient in the same concentration and are appropriate for an overlapping age range of consumers. The only differences between the products—that one contains two fluid ounces and the other contains four fluid ounces, and that they contain different dosing instruments—are also prominently disclosed. Therefore, the labels are not false or deceptive and plaintiff's NYGBL claims fail as a matter of law. *See Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 501 (2d Cir. 2020) (finding that "there can be no section 349(a) claim when the allegedly deceptive practice was fully disclosed" in the advertisements (citation omitted)); *Fermin*, 215 F. Supp. at 212 (dismissing plaintiffs' claim that the different

sizing of the ibuprofen packaging was misleading because "[p]laintiffs provide no basis for disregarding the clearly stated pill-counts on the labels"); *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 391 (E.D.N.Y. 2017) (finding that a reasonable consumer would not be misled where the alleged deceptions "are eclipsed by the accurate disclosure statement" on the packaging).

## II. Plaintiff's unjust enrichment claim is dismissed as duplicative of her NYGBL claims.

"Under New York law, a plaintiff may prevail on a claim for unjust enrichment by demonstrating '(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution.'" *Nordwind v. Rowland*, 584 F.3d 420, 434 (2d Cir. 2009) (quoting *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006)). An "unjust enrichment claim 'is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff.'" *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 296 (S.D.N.Y. 2015) (quoting *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012)). The unjust enrichment cause of action "is not a catchall . . . to be used when others fail." *Corsello*, 18 N.Y.3d at 790. It "is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Id.* at 790–91. Typically, it is available when "the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." *Id.* District courts in this circuit have dismissed unjust enrichment claims when they have relied on the same facts as the plaintiffs' other asserted causes of action. *See Price v. L'Oréal USA, Inc.*, No. 17-CV-614 (LGS), 2017 WL 4480887, at *5 (S.D.N.Y. Oct. 5, 2017) ("All of the claims in the Complaint are based on the same alleged misrepresentation by Defendants . . . Accordingly, Plaintiffs' New York unjust enrichment claim is dismissed as duplicative."); *Bowring*, 234 F. Supp. 3d at 392 ("Plaintiff's unjust enrichment claim relies on the same facts as her other causes of action in tort.

Because this claim is duplicative, it is dismissed."); *Buonasera*, 208 F. Supp. 3d at 568 ("Buonasera is alleging tort causes of action and is relying on the same set of facts for these causes of action as he is for the unjust enrichment claim. Because Buonasera fails to show how the unjust enrichment claim is not duplicative, it should be dismissed."). In particular, I have recently dismissed unjust enrichment claims when they duplicated statutory claims under NYGBL §§ 349 and 350. *See Silva v. Hornell Brewing Co.*, No. 20-CV-756 (ARR) (PL), 2020 WL 4586394, at *7 (E.D.N.Y. Aug. 10, 2020); *Sarr v. BEF Foods, Inc.*, No. 18-CV-6409 (ARR) (RLM), 2020 WL 729883, at *10 (E.D.N.Y. Feb. 13, 2020).

Here, in asserting the unjust enrichment cause of action, plaintiff alleges that "Rite Aid's unlawful conduct as described in this Complaint allowed Rite Aid to knowingly realize substantial revenues from selling Infants' Products at the expense of, and to the detriment or impoverishment of, Plaintiff and the Nationwide Class members, and to Rite Aid's benefit and enrichment. Rite Aid has thereby violated fundamental principles of justice, equity, and good conscience." Am. Compl. ¶ 84. Plaintiff argues that these claims are "unique" from, and therefore not duplicative of, her NYGBL claims because "a 'reasonable trier of fact could find unjust enrichment . . . without establishing all the elements for one of [plaintiff's other] claims sounding in law.'" Pl.'s Opp'n 30 (quoting *Warner v. StarKist Co.*, No. 18-CV-406 (GLS) (ATB), 2019 WL 1332573, at *3 (N.D.N.Y. Mar. 25, 2019)). Plaintiff's argument fails. Plaintiff's unjust enrichment claim arises out of the same factual allegations as its NYGBL claims: namely, that defendant unlawfully packaged its products in a misleading way. I have already determined as a matter of law that defendants' packaging was not deceptive or misleading; thus, if the NYGBL claims fail, then the unjust enrichment claim necessarily fails. *See Sarr*, 2020 WL 729883, at *10. I therefore dismiss plaintiff's unjust enrichment claim as duplicative.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss plaintiff's amended complaint is

granted.

SO ORDERED.

Dated:     July 15, 2021                     ____/s/_____
                 Brooklyn, NY                     Allyne R. Ross
                                          United States District Judge